SARTAIN, Judge.
Mrs. Emma J. Bryant appeals from a ruling of the Civil Service Commission which sustained the action of the Superintendent of the Division of State Buildings and Grounds in dismissing her from her classified position of Custodial Worker II, effective April 2, 1971.
Under date of March 31, 1971, the Superintendent notified appellant that she was being discharged from the service and assigned the following reasons, to-wit:
“Failing to accept a reassignment from Library Night to Capitol Day, as explained to you in your letter dated 3 — 18— 71, and abusing your Sick Leave to the effect as not to accept this reassignment.
“It has always been the policy of this department to accept the position with us as your first and most important job, knowing that some of our employees do hold down two jobs. We have never let the other position interfere in any way with our policies of reassignment of positions. You let it be known that you did not want to be reassigned to a day job, then did everything you could to keep from accepting this reassignment.
“On 3-18-71, reporting to your supervis- or at Capitol Day, you stated you were sick and unable to work. Your supervis- or informed you he could not grant you Sick Leave at this time. On 3-19-71, you reported to work, bringing a memo from Dr. Noto, stating that you needed a two months rest. Again on 3-22-71, you requested Sick Leave and you were informed to take off the rest of the week, straighten out your business of your other job that was interfering with your reassignment of this job.
“On 3-24 — 71, you called Mrs. Cambre, Personnel Officer, and informed her that you had gone to Dr. Schudmak and he didn’t find too much wrong with you. You also informed her that Dr. Noto, said you should take your medicine and rest. You than informed Mrs. Cambre, that you would take off the rest of the week and be in on Monday, 3-29-71. You assured Mrs. Cambre, that you had resigned your School Crossing position and that would not interfere with this job.
“In checking this out with your supervisor at City Police, this is not the case at all. In fact you have gone so far as to tell them you will be back on the night shift as of May 1, 1971, with this department.
“You have failed to report on 3-29-71, the date you assured us you would be back and you failed to call in and advise anyone of the reason. As of today, 3-31-71, you are still not on the job and no reason has been reported to this office.
*680 “This action can only be construed to mean that you have no intention of reporting for duty on the day shift at the Capitol, therefore; abandoning your position.”
Appellant perfected two appeals. First, she appealed the decision of the Superintendent which transferred her from night duty at the State Library to day duty in the Governor’s Office. Second, she appealed the action of dismissal. She has abandoned her appeal as to the transfer of duty and we will concern ourselves here with the issue of dismissal.
The Commission’s findings of fact relative to dismissal are as follows:
“When reassigned, the appellant refused to accept her transfer and complained of illness. The complaints were contemporaneous with her reassignment. Appellant was faced then with a minor crisis in her life. She had to choose between two day jobs. She took her civil position with no assurance that she would be on night duty at all times, but it is understandable that she might be emotionally upset by the turn of events. Her complaints were, according to the evidence, subjective and probably emotionally induced.
“At any event, she was given sick leave of a week to adjust herself and her problems and to return to work on March 29. On March 29 she did not report to work and failed to call in or advise anyone of the reason for her failure to return to work.
“She was placed on leave without pay and on March 31, the letter of discharge, effective April 2nd, was sent. The letter charges appellant with abandoning her position by failing to report back to work on March 29, and with failing to accept her reassignment of March 18, 1971.
“This Commission was not impressed with plaintiff’s testimony. Her contradictions and evasions are obvious from the reading of the testimony. This Commission finds that the appointing authority was justified in terminating appellant’s employment because she failed to cooperate on the reassignment and transfer of March 18, and because she failed to return to work on March 29 and to request sick leave with proper documented evidence prior to that date. The medical statements, which might have supported a request for sick leave, exhibited at the time of trial, were not available to the appointing authority when the dismissal occurred, and, even had they been available, there is considerable doubt whether he would have been any more impressed with the medical evidence than this Commission was.”
While the issue is not now before us it is necessary that we discuss briefly appellant’s reassignment of duty. Prior to March 18, 1971, she worked at night. This permitted her to hold a job with the City Police of Baton Rouge as a School Crossing Attendant. It is evident that she objected very strongly to the day work because this required that she discontinue her employment with the City Police. However, the fact remains that she did report to work for the day shift and worked in this capacity on Thursday and Friday, March 18 and 19, 1971. When she reported for work on Monday, March 22, 1971, she again requested sick leave. Apparently, this was for two months. She was informed by the Personnel Supervisor that, whereas, she might be allowed one or two weeks sick leave, the two months leave as recommended by her personal physician would not be honored without additional medical documentation. The Supervisor, however, did recommend that appellant take the balance of the week off as sick leave but to report back to work on Monday, March 29, 1971. When she failed to appear on the 29th, she was placed on leave without pay from that date through April 2, 1971. The letter of dismissal was written Wednesday, March 31, 1972.
Appellant testified that she told her Supervisor that whe would report on the 29th *681 if she was able to do so. When she called on April 1, 1971, in response to the letter of dismissal, she was informed that her dismissal was final, hence the appeal.
Several pertinent facts are not in dispute. At the time she applied for sick leave, plaintiff had accumulated 692 hours credit for sick leave purposes. Though she did not respond to supervision as she should have when working the night shift, her work was acknowledged to be very satisfactory by every witness. The appointing authority in his letter notifying appellant of the transfer stated that reports of her insubordination were not sufficient to justify disciplinary action, but did “warrant your (her) being reassigned to a day job with closer supervision.” Her work for the three days at the Governor’s Office was also termed satisfactory. During these three days she did request reassignment back to the night job. These requests are not the basis for her ultimate dismissal. The dismissal letter accuses appellant of failing to “accept” the reassignment, but more importantly, of “abusing” her sick leave privileges.
In addition to the alleged abuse of sick leave, appellant was charged with failing to report for work on March 29, 1971, or advising her supervisor as to the reasons therefor. The dismissal letter closes with the assumption that appellant “abandoned” her position. The Commission affirmed the action of the appointing authority, obviously concluding that appellant had (1) abused her sick leave privileges and (2) abandoned her position.
The letter of dismissal, in essence, reduces itself to the same two charges. We, therefore, look to the record before us to determine whether or not the action of the appointing authority, as sustained by the Commission, should stand.
It is well settled that when an appeal is taken to the Commission, seeking to overturn the action of an appointing authority, the burden of proof rests with the employee-appellant to show that the charges are unfounded. Louisiana Constitution, Article XIV, Section 15(N) (1) (a) ; Louisiana Civil Service Commission, Rule 13.19(c); Trotti v. Department of Public Safety, 234 So.2d 450 (1st La.App. 1970).
Further, review by us of the decision of the Commission is restricted to questions of law. Louisiana Constitution Article XIV, Sec. 15(0) (1). Only in cases where there is no evidence in the record to support the findings of fact by the Commission may we delve into a factual dispute. Smith v. Louisiana State Board of Health, 201 So.2d 14 (1st La.App., 1967) reaffirming the pronouncements by this court in Gremillion v. Department of Highways, 129 So.2d 805 (writs denied).
In the case at bar, we must consider that there is no evidence in the record to support the conclusion that appellant abttsed her sick leave privileges and abandoned her position. To the contrary, the only evidence in the record relative to appellant’s physical condition is to the effect that she was suffering from “hypertension, extreme nervousness and post-menopausal changes”. The Commission was in error when it found that the appointing authority did not have the benefit of this medical statement when the dismissal was ordered. There is no dispute between the appointing authority and appellant that this information was given to appellant’s immediate superior on March 22, 1971. The certificate further recommended two months rest. It was with this very recommendation that the appointing authority disagreed.
The recommendation was made by Dr. Joseph J. Noto, a general practitioner, appellant’s treating physician. He also testified in appellant’s behalf and confirmed his recommendations. His findings as to hypertension and post-menstrual disorders are not subjective as found by the Commission. Appellant stated that during the week of March 22-25, 1971, she saw Dr. O. M. Thompson, Jr. at the Baton Rouge General Hospital here in Baton Rouge. His testi *682 mony was offered by stipulation with the notation that at the time he saw appellant she was emotionally upset and unable to work. He prescribed a sedative and instructed her to return to her personal physician. Admittedly, Dr. Thompson’s note was not presented to the appointing authority prior to dismissal, but it is corroborative of her testimony as to her condition and that of Dr. Noto that she needed further rest and treatment.
The testimony of Dr. Noto, his notation of March 19, 1971, and the opinion of Dr. Thompson stand alone in the record, un-contradicted and unrebutted. Therefore, we must find that there is no evidence in the record to support the Commission’s findings of fact that appellant abused her sick leave privileges. It is true that appellant worked prior to March 18, 1971, without complaint, but she was under a doctor’s care at the time. The fact that she did not voice a complaint until she was transferred does not negate the fact that she was ill.
The remaining issue is whether or not plaintiff "abandoned" her job. The letter of dismissal, for reasons stated therein, charges that she did. Its language is clear and unambiguous. It must be accepted for what it says. The letter was written at a time when the appointing authority concluded that she had retained her school crossing job in lieu of her classified position. The finding of fact by the Commission reaches the same conclusion. The evidence is completely to the contrary. Appellant did not return to this school job after March 17, 1971. She asked for a two months’ leave of absence in that position also because of illness.
Ultimately she would have had to make the decision but at the time the letter of dismissal was dispatched she had not. She simply did not return to work on March 29, 1971, because she was ill. She still had not returned to her school crossing job at the time of the hearing before the Commission either on June 1, 1971, or by August 3, 1971, the last date of the hearing. Any assumption reasonably leading to the conclusion of abandonment was completely rebutted and there is no evidence in the record to the contrary.
Accordingly, for the above and foregoing reasons, the decision of the Commission sustaining the action of the appointing authority is reversed and appellant is ordered reinstated in her former position as Custodial Worker II as of March 29, 1971. Judgment is further rendered in favor of appellant, Emma J. Bryant, and against the Division of State Buildings & Grounds for wages due her from date of reinstatement, provided, however, that the period of time equal to two working months following the date of reinstatement is to be charged against her accrued sick leave.
Reversed and rendered.